ELISHA S. WADSWORTH *et al.* appellants, *v.* GEORGE THOMPSON, who sues for the use of Lewis Peet, appellee.

## *Appeal from Cook.*

The time of performance of a contract in writing may be extended by a subsequent parol agreement, and no new consideration is necessary, where there are mutual acts to be performed by the parties.

Where goods have been placed by a debtor in the hands of his creditor, as collateral security for the debt, and an extension of the time of payment has been given, the goods cannot be sold by the creditor before the expiration of such extension.

ACTION ON THE CASE, in the Cook Circuit Court, brought by the appellee against the appellants, and heard at the November term 1845, before the Hon. Richard M. Young without the intervention of a jury, when a judgment was rendered in favor of the plaintiff below for $1001·32. The facts, &c. are stated by the Court.

*J. Butterfield,* for the appellants, made an able argument upon the distinction between a mortgage and a pledge, and upon the rights and duties thereto appertaining. But, as the decision turned on another point, that portion of his brief is omitted, and so much only thereof is inserted as was considered by the Court, which is as follows:

A promise to extend the time for the payment of a note is void, unless founded on a sufficient consideration.

A promise to pay a part of the note when due, and to renew it for the residue, is not a sufficient consideration. *Miller* v. *Holbrook,* 1 Wend. 317.

*A. T. Bledsoe,* for the appellee.

1. The time of performance may be extended by a subsequent parol agreement. 1 Phil. Ev. 562; *Baker* v. *Whiteside,* Bre. 132–3; *Erwin* v. *Saunders,* 1 Cowen, 249; *Frost* v. *Everett,* 5 do. 497; *Dearborn* v. *Cross,* 7 do. 50; *Franklin* v. *Long,* 7 Gill & Johns. 407; *Robinson* v. *Batchelder,* 4 New Hamp. 45.

2. There was a sufficient consideration for the extension. Story on Bailm. 154, §§ 217, 218.

The Opinion of the Court was delivered by

KOERNER, J.* George Thompson, the appellee, sued E. S. & J. Wadsworth, in the Cook Circuit Court, at the November term 1839, in an action on the case. The declaration contained two special counts, and also a count in trover. The defendants demurred to the first count and filed pleas of the general issue to the second and third counts. Issue was joined on said pleas, and the demurrer sustained to the first count, which was thereupon amended, and a plea of not guilty interposed to it, upon which issue was joined. At the November term 1845, the cause was submitted to the Court without the intervention of a jury, and the Court found the defendants not guilty as to the first and second counts in the declaration, and guilty as charged in the third count, and assessed the plaintiff's damages by reason of the trover and conversion, at the sum of one thousand and one dollars and thirty two cents. The defendants moved for a new trial, which was overruled, and judgment rendered for the amount of damages found by the Court. The defendants prayed an appeal to this Court.

The bill of exceptions taken by the defendants' counsel discloses the following case: On the 11th July, 1838, the appellee, Thompson, plaintiff below, gave his two promissory notes to E. S. & J. Wadsworth, due in ninety days from date, and also placed in their possession a lot of goods. E. S. & J. Wadsworth gave to Thompson the following instrument in writing:

"Received of George Thompson two cases of hats, one keg of tobacco, one box dry goods and one cask of crockery, as collateral security for the payment of a note of two hundred and eighty seven dollars $\frac{50}{100}$; also, a note of seventeen $\frac{50}{100}$ dollars, bearing even date with this, due ninety days from date, said goods to be forfeited in case of failure to pay said note at the time it becomes due. Goods to re-

* WILSON, C. J. did not sit in this case.

main at the risk of said Thompson against damage by fire or otherwise. Chicago, July 11, 1838.

E. S. & J. Wadsworth."

The delivery took place when the receipt was given. The understanding at that time was, that the Wadsworths were to have a thousand dollars' worth of goods. One of the Wadsworths, on examining the goods, said there was not enough to make a thousand dollars, in consequence of which remark, Thompson added the cask of crockery. Wadsworth then admitted that he had a thousand dollars' worth, but from other testimony in the case, it is apparent that the goods were not actually worth that much, though they must still have been worth more than twice the amount of the notes.

A short time before the notes became due, Thompson called upon J. Wadsworth, one of the defendants below, and told him that he was not prepared to pay the notes when they would become due, and wanted Wadsworth to renew them. This, Wadsworth declined doing, but said that he would extend the time three weeks longer. Within a few days before the expiration of the three weeks, Ryan, Thompson's attorney, tendered the amount due on said notes to J. Wadsworth, who was willing to accept the money, but stated that a part of the goods had been sold at auction, and that he would account for those sold at the price which they brought, and give credit accordingly. He offered to deliver those remaining unsold. Thompson refused to take back a part of the goods only. J. Wadsworth contended that the goods had become forfeited, and that he had a right to sell them. The amount actually sold was not stated by Wadsworth. No notice of this sale had been given to Thompson. The tender of the money was made on the 24th day of October, 1838.

On the 31st of the same month, the defendants placed a notice in the hands of said Ryan, informing the plaintiff that the goods (not already sold,) mortgaged to them would be sold at auction on the 10th day of November next, unless the balance due would be paid before that day.

Upon this evidence, the Court found the defendants guilty of trover and conversion of said merchandize, found

the value of the same at the time of the conversion to have been $703·92, computed the interest thereon at $297·40, principal and interest making in all the sum of $1001·32, and offered to deduct from the amount of damages so found, if the plaintiff's counsel assented, the sum due defendants on the notes, computed with interest at $434·62.

The defendants, by their counsel, insisted upon this deduction as a matter of right, the plaintiff's counsel at the same time offered to enter a *remittitur* for the $434·62, provided that the defendants' counsel would produce the notes and deliver them to plaintiff, or put them on file and cancel them, which the counsel for defendants refused to do. The Court then entered a verdict for the full amount of plaintiff's damages, whereupon the defendants, as already stated, moved for a new trial.

Upon this motion coming up for argument, the defendants' counsel offered to place said notes on file, if the plaintiff would enter a *remittitur*, without prejudice to the defendants' right to an appeal to the Supreme Court, and to cancel said notes, if the judgment of the Circuit Court should be affirmed.

The motion for a new trial was overruled, and judgment entered up in conformity with the finding of the Court.

The errors now assigned upon this record are substantially these, that the Court found against the evidence and the law applying to the case, and that the Court would not deduct from the damages the amount of the debt, which was intended to be secured by the delivery of the goods.

If the law was properly understood and applied to the facts disclosed on the trial, there can be no doubt that the finding of the Court was fully warranted by the evidence. The only conflict in the testimony seems to have been in regard to the value of the goods at the time of the conversion, and we have seen that the Court allowed much less than the evidence of the plaintiff's witnesses alone, would have warranted. The extension of time by the defendants for the payment, the tender before such extended time had expired, the absence of all notice before the first sale, and the con-

version of the goods, if they were sold before the law permitted it, were clearly established by the testimony. It is, then, on the law governing this case, that the propriety or impropriety of the finding of the Court must necessarily turn.

The question as to the character of the writing given by the Wadsworths to Thompson, and as to the real nature of the transaction of which it was intended to be the evidence, has been very fully discussed by counsel. The plaintiff's counsel has contended that the transaction was a mere pledging or pawning of the goods, and that the insertion of the words, "to be forfeited in case of failure to pay said notes, when due," had no legal operation, and could not convert the contract of pawning into that of mortgaging the goods, and for this position we have been referred to the opinions of two very distinguished American jurists, Chancellor Kent and Justice Story. 2 Kent's Com. 583; Story on Bailments, §§ 317, 318, 345. There is also an authority to the same effect in 7 J. J. Marsh. 323. This was unquestionably the rule in the Civil Law, as it is found in the compilation of Justinian, ( *Constitutio* 3. *Codicis*, 8, 35,) though such contracts of forfeiture had been considered as binding previous to the time of the Emperor Constantine, (320 C. Ch.) who abolished the law ( *lex commissoria*,) allowing such contracts.

The defendants' counsel has denied this to be the Common Law, which will not permit Courts of law to make contracts for the parties, or to destroy their intended effect, and has insisted that the goods became the absolute property of the defendants by the non-compliance of the plaintiff, and that the instrument or receipt in question must be looked upon as a mortgage of personal property, by which the title passed immediately to the mortgagee, and is defeasable only by a strict performance on the part of the mortgagor, so far, at least, as a Court of law can adjudicate. The view, however, which this Court has taken of this .case renders it unnecessary to decide upon the precise nature and character of this written instrument, and upon the rights of the parties, as growing out of it, if the contract should receive the one

or the other construction. If the transaction be considered as a pawn, and not affected by the stipulation of forfeiture, then the plaintiff was clearly entitled to notice before the Wadsworths could rightfully sell and convert the property to their own use. 2 Kent, 502; 2 Story on Bailments, § 310; 2 Story on Equity, 1033; Jones on Bailments; 2 Johns. Ch. R. 100; 1 U. S. Dig. 369, § 37. If, however, the contract be considered in the light of a mortgage, as either passing at once the legal estate to the defendants below, or having vested such estate in them after forfeiture, (Pow. on Mortgage, 3; 8 Johns. 96; Story on Bailments, §§ 207, 345;) we are still of opinion that the defendants had no right to dispose of the property, and treat it as absolutely their own, for the reason that time had been given for the payment of the money, and hence, also, for the redemption of the goods.

That the time of performance of a contract in writing may be extended by a subsequent parol agreement, seems to be unquestionable, and has been held so by this Court in the case of *Baker* v. *Whiteside,* Breese, 132–3. See, also, Phillips on Evidence, 562; but it is objected that the promise of Wadsworth to extend the time was without a sufficient consideration, and, therefore, void.

It is conceded that it is settled by many decisions that a promise to extend the time for the payment of a note, is void, unless founded on a new consideration. But there is certainly a distinction between cases where but one party has to do a certain act, and the other remains wholly passive, and between cases where something is to be done mutually by both parties. The books are full of cases where the time of performance has been subsequently extended, and the party who failed to perform under the former contract, has been considered as excused from such performance. I have examined many such cases, and the point of want of consideration seems not even to have been mooted in any of them. The case of *Keating* v. *Price,* 1 Johns. Cases, 22, is one of that class. In that case the defendant promised, in writing, to deliver a quantity of staves, on or before the first day of May, 1796. The plaintiff agreed to extend the time until the spring following. The Court said that "an extension of

Wadsworth *et al. v.* Thompson.

time may often be essential to the performance of contracts, and there can be no reason why a subsequent agreement for that purpose should not be valid, and proved by parol evidence." That case is cited with approbation by the Supreme Court of our State, in the case of *Baker* v. *Whiteside.* The case of *Fleming* v. *Gilbert,* 3 Johns. 528, bears also upon this point. In 2 Wend. 587, it was held "that there can be no doubt that a parol enlargement of the time set in a sealed instrument for the performance of covenants, is good." The same is substantially decided in 9 Wend. 68.

The whole doctrine of consideration is one founded on strict law. The moral obligation to fulfil a promise voluntarily made and having a rational object, is not denied. For this reason Courts have been always anxious to support promises where the slightest consideration can be made to appear. The giving of a peppercorn is a sufficient consideration in law; hence the benefits to the party promising, or the prejudice to the one to whom the promise is made, either of which constitutes a consideration, need not be very great. It is enough if it is perceptible.

Now, in the present case, besides the contract for the payment of the notes, there was another, though one inseparately connected with the first, existing between the parties. Goods had been delivered to the defendants of considerably greater value than the amount due them by the plaintiff. Whether mortgaged or pledged, they were to be re-delivered to plaintiff if he performed his part of the stipulation. If he failed, they belonged to the defendants, assuming the contract of forfeiture to have been valid, if they were merely pledged. Let us see what the incidents of this contract were, and here it may be as well to remark, that even if the goods were mortgaged, yet the defendants, before forfeiture, substantially occupied the position of pledgees or pawnees in regard to their rights and duties. At Common Law, as well as at the Civil Law, the pawnee could sell or assign all his interest in the pawn. Story on Bailm. § 324; 20 Pick. 399. He may sub-pledge it to another person. Ibid. note 2, and 1 Cod. 8, 23; Lex. 7, § 2; Dig. 20, 5.

If the use will be beneficial to the pawn, or if it be indif-

ferent to it, then the pawnee may use it. Story, Ib. § 329; Jones on Bailm. 81. *Coggs* v. *Barnard,* 2 Lord Raym. 909, 916. On the other hand, the pawnee is bound to apply ordinary diligence on the thing pawned, (Story Ib. 342, and L. 13, § 1; Dig. 13–7,) a liability which, in the present case, seems even to have been intended to be avoided on the part of the defendant, by the terms of the agreement, "goods to remain at the risk of said Thompson by fire or otherwise." In § 332, Justice Story says: "A bailment (of pawning) is for the mutual benefit and interest of both parties."

It seems to me clear, that such being the character of the then subsisting contract between the parties, a continuance or extension of it, it being for the mutual benefit and interest of both parties, does rest upon a sufficient consideration. The defendants were amply secured, might have used the goods to raise money from others by sub-pledging, and were permitted to make a reasonable use of them, while they had them in their possession. Thompson, on the other hand, was deprived of their use. They were dead as to him, while the interest was accumulating on his debt. But aside from the question of consideration, we may well place our decision in this case on more enlarged grounds. Neither a Court of Law, or a Court of Chancery, can permit fraud or circumvention to be perpetrated in this manner. I do not mean to say that there was actually a fraud intended in this case, but the failure to keep the promise had identically the same effect as if wilful deceit and imposition had been practised. If the promise of extension had not been made, is it not reasonable to suppose that Thompson would have strained every nerve to rescue goods, considered by him worth $1000, from the impending sacrifice? He had several days left to make arrangements for the redemption of his property, but by the act of the defendants he was lulled into a false and dangerous security. He suspended his efforts, and when he proposed paying the money within the time, he had been told that his property would not be considered as forfeited, he had found to his great surprise, that part of it had already been disposed of under the auctioneer's hammer, and at great loss. We cannot now, in justice, admit of such a

Wadsworth *et al. v.* Thompson.

defence as this: "True, we extended the time, and told you that we would not claim the goods as our own, but as you did not pay us a cent, or hand over a pepper-corn, we were not bound by our promise, and you must submit to the loss." Even if the promise of the defendants had been wholly gratuitous, we would still hold that under the peculiar circumstances of this case, the extension of time would be binding upon the defendants.   A principle analogous to the one which we have applied to this case, is recognized in the law books in many cases, of mere gratuitous acts.   In Comyn's Dig. 18, it is said: "The Common Law in some cases considers the mere entrusting a thing with another and his undertaking the care of it, a sufficient consideration for his faithful discharge of the trust.   And, therefore, though a person who gratuitously engages to do an act for another is not liable in law to an action for not doing it; yet if the goods are delivered to him, and he undertakes to carry them, or do something about them without reward, an action of assumpsit will lie on this bailment, if there be any neglect on the part of the bailee, by which the goods are injured."   For a further exposition of this interesting branch on the question of consideration, I refer to Story on Bailm. §§ 217, 219.

In regard to the second point, that the Court erred in not allowing a deduction from the damages to the amount of the notes and interest due from plaintiff to defendants, we do not exactly see that it arises on this record.   It does not appear that the defendant either before the trial, by plea or notice, claimed this debt as an off-set, or that he at the trial placed himself in a condition to have such deduction made.   The Court might well have supposed from the silence of the defendants on this subject, that defendants, in case judgment should go against them, meant to rely on their independent action on the notes, or that they had previously parted with their interest in the same.   The Court suggested the propriety of having the deduction made in this action, if the plaintiff would consent, which suggestion was rather extrajudicial, and solely intended for the benefit of the defendants. It appears that the plaintiff's counsel was willing to have such deduction made, provided the defendants' counsel

would deliver the notes to him, or place them on file and have them cancelled, but the defendants refused to do so. Perhaps it was requiring too much to ask for a delivery or cancelling of the notes, but then the defendants should have offered to do what the plaintiff was legally entitled to, that is, a production of the notes and placing them under the control of the Court without prejudice as to the right of appeal. No offer of any kind, however, was made at that time. He could not claim a deduction in the judgment for the amount of the notes, and retain them, they being negotiable instruments, at the same time. It is true, that after the rendition of the verdict, and on the motion for a new trial, the defendants offered to place said notes on file, but surely they were then too late. The Court could not be required to go behind the verdict and open it, as it were, for any thing which transpired subsequently. At the time the verdict was pronounced, it was given on the facts as they then existed, and unless the plaintiff had consented, it would have been highly improper in the Court to have changed the verdict, so as to conform to a different and subsequent state of facts. Suppose the verdict had been found by a jury, and there is no difference between a verdict found by the Court and one rendered by a jury, would the Court have been authorized to set aside their verdict for matter introduced on the motion for a new trial? The statement of the proposition contains its refutation.

We apprehend that no serious injury can arise to defendants from not having the deduction made in this action, as they may sue the plaintiff on his notes, and in case of his insolvency, which was suggested on the argument, may apply to the proper tribunal and prevent the collection of more than the plaintiff is equitably entitled to.

The decisions of the Court, which are alleged here for error, appear to us to have been correct.

Judgment is, therefore, affirmed with costs.

CATON, J. dissented.

*Judgment affirmed.*