THE NATIONAL BANK OF ILLINOIS

*v.*

MARY S. BAKER.

*Filed at Ottawa May 16, 1889.*

1. PLEDGE—*sale of the pledge—before and after maturity—demand of payment—notice to redeem.* Ordinarily, when a pledge of property is made to secure the payment of indebtedness, the pledge can not be sold until after the debt is due and demand is made to redeem, and notice is given of the intention to sell.

2. Parties may, however, by contract, agree that in certain contingencies the pledge may be sold before the debt is due, or that it may be sold without previous notice, etc. But in such case, what is the contract must be determined from the language used, and not from a consideration of what would best subserve the interests of the creditor, for the law has no greater regard for his interest than it has for that of the debtor.

3. The rule at common law was, that the pledgee must give notice to the pledgor to redeem, before he could sell. The purpose of this notice

was to terminate the indulgence and require the pledgor to protect his property, while notice of the sale is to invite competition and secure the best price attainable by a sale.

4.  Where the sale is only to be made in the event of failure to make payment at the maturity of the debt, it may be that the pledgor is not entitled to a demand of payment. But when the pledgee elects to sell the pledge before the debt is due, because of the happening of a contingency provided for by agreement, the pledgor is entitled to notice to redeem, and that the pledgee will not wait till the maturity of the debt. A sale without notice, in such case, will not pass the pledgor's right of redemption.

5.  SAME—*sale before maturity—in case of depreciation of pledge "in market value"—worthless stocks.* The makers of a promissory note deposited in pledge with the payee certain certificates of shares in a corporation, and also a life policy of insurance of one of the makers of the note, calling for $5000. The certificates of stock proved to be counterfeits, and worthless. The contract of the parties provided, that on default of payment of the note at maturity the pledgee might sell the pledge, and also, "in the event of said security, or any part thereof, depreciating in market value," that the pledgee might, either before or after maturity of the note, sell the pledge, either at public or private sale, and waive any and all notice of the sale to the pledgors: *Held,* that the words "depreciating in market value," had no reference to the security of the certificates of stock, for, being worthless, their value could not depreciate; and that a sale by the pledgee before the maturity of his debt did not pass the absolute title, but that the pledgors might redeem the same by payment of the note when due.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Mr. MATTHEW P. BRADY, for the appellant:

A power to sell collaterals may be given by the contract of pledge. Such a power is not contrary to public policy. The terms of the contract of pledge govern the rights of the parties as to the time, place and notice of sale. Colebrook on Collateral Securities, p. 162, sec. 118; *Union Trust Co.* v. *Rigdon,* 93 Ill. 458; *Loomis* v. *Stave,* 72 id. 623; *Zimpleman* v. *Veeder,* 98 id. 614; *Milliken* v. *Dehon,* 27 N. Y. 364; *Choteau* v. *Allen,* 70 Mo. 290.

Under a special authority to sell collaterals upon default, without notice, all notice of the time and place of sale, such as the law requires in the absence of a special agreement, is waived. *Insurance Co.* v. *Dalrymple*, 25 Md. 242; 25 id. 269; *Bryson* v. *Rayner*, id. 424; 29 id. 473.

If the pledgee, under a power of sale conferred on him, makes a *bona fide* sale of the collateral to one capable of buying, the sale will pass the title to the collateral beyond the pledgor's reach. *Zimpleman* v. *Veeder*, 98 Ill. 614; *Lewis* v. *Mott*, 36 N. Y. 395; *Duncomb* v. *Railroad Co.* 84 id. 190; *Union Trust Co.* v. *Rigdon*, 93 Ill. 458; *Jerome* v. *McCarter*, 94 U. S. 734; *Bridge Co.* v. *Douglas*, 12 Bush, 673; *Railroad Co.* v. *Iron Co.* 50 N. H. 57.

A *bona fide* sale of collaterals, made after default, under a power of sale, vesting the title in a purchaser for value in good faith, is not affected by a tender of the debt and charges made subsequently thereto. *Loomis* v. *Stave*, 72 Ill. 623; *Choteau* v. *Allen*, 70 Mo. 290; Colebrook on Collaterals, sec. 122.

Messrs. ABBOTT & BAKER, for the appellee:

Under the power executed, a valid sale could not be made without making a demand to redeem. *Wilson* v. *Little*, 2 N. Y. 443; *Stearn* v. *Marsh*, 4 Denio, 227; *Mory* v. *Wood*, 12 Wis. 419; *Strong* v. *National Bank*, 45 N. Y. 718; *Bryan* v. *Baldwin*, 32 id. 233.

The attempted sale by Kretsinger to Freeman was not made in good faith, of which fact Freeman had notice, and therefore the sale was void.

The pledgee of personal property is the trustee for the pledgor. *Union Trust Co.* v. *Rigdon*, 93 Ill. 458; *Iron Co.* v. *Brick Co.* 82 id. 548; *Zimpleman* v. *Veeder*, 98 id. 614.

A transferee taking with notice of the violation of the trust, takes it subject to the trust. *Fawsett* v. *Insurance Co.* 5 Bradw. 274.

While a power may authorize a sale either at public or private sale, the pledgee, nevertheless, is bound to use reasonable care and diligence to obtain the best price for the pledge. Like all trustees, he must act in good faith.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 14th of December, 1885, William Baker, and Mary S. Baker, his wife, made and delivered their promissory note to W. H. Kretsinger, and thereby promised to pay him, ninety days after date, $600, with interest thereon at the rate of eight per cent per annum. Annexed to the note was a power reciting that there was deposited with Kretsinger, as security for the payment of the note, a certificate of stock of the "Journal of Commerce Company," calling for one hundred shares, of $100 each; also, policy 63,990, for $5000, in the New England Mutual Life Insurance Company, on the life of William Baker, payable to his wife, Mary S. Baker, and concluding as follows:

"And in default of payment of said note, or any part thereof, at maturity, I do hereby authorize said Kretsinger, or his assigns, to sell and dispose of said security, or any part thereof, at public or private sale, in his or their discretion; and in the event of said security, or any part thereof, depreciating in market value, I do hereby authorize said Kretsinger, or his assigns, at his or their option, to sell and dispose of said security, or any part thereof, at any time before or after the maturity of said note, at either public or private sale; and in the event of sale before or after the maturity of said note, as aforesaid, no notice of such sale shall be required to be given to the undersigned, or to any other person or persons whomsoever, either by advertisement or otherwise; and the proceeds of such sale or sales, so made as aforesaid, shall, after the payment of all expenses and commissions attending said sale or sales, be applied on said note, and the balance, if any, after payment of said note, with interest, shall be returned to the

undersigned, his heirs, executors, administrators or assigns; and at any sale of said collaterals, or any part thereof, made by virtue hereof, it shall be optional with the legal owner or holder of said promissory note to bid for and purchase said collaterals, or any part thereof.

"Witness my hand and seal, at Chicago, in the State of Illinois, this 14th day of December, A. D. 1885.

(Signed)                              WILLIAM BAKER, (seal)
(Signed)                              MARY S. BAKER. (seal)"

Before the maturity of the note, and on the 23d of January, 1886, Kretsinger received the amount due upon his note from an agent of the Bank of Illinois, to whom William Baker was largely indebted, and, in consideration thereof, indorsed and transferred the note and the power and securities to him, and he subsequently formally transferred them to the bank. There was no demand upon the Bakers to redeem the pledge before these transfers. William Baker was dangerously sick at the time of this transfer, and he died of that sickness on the 15th of February, 1886. Tender was made to the bank of the amount due upon the note, for the payment of which the pledge was made, in due time, but the bank refused to accept it.

The question here is, whether the transfer by Kretsinger to the agent of the bank passed the legal title to the entire amount of the policy, or did it only transfer the policy as a security for the payment of the $600 note and accruing interest.

There was proof that the signature of the secretary of the company, to the stock of the "Journal of Commerce Company," was not genuine. There is no evidence to prove the value of that stock, if genuine, and there is no evidence tending to prove that Mary S. Baker had any knowledge, at or before the transfer by Kretsinger, that it was not genuine. Appellant contends that the stock not being genuine, there was a "depreciating in market value" of the security pledged, within the meaning of those words as used in the power. The

courts below held otherwise, and, consequently, that Krets-inger transferred the policy of insurance only so far as it was a security for the payment of his note transferred at the same time to the same party, and that after payment of the amount due upon that note, Mary S. Baker is entitled to the balance of the amount due upon the policy. We entirely concur in this ruling. Whether parties shall take any, and, if any, what kind of, security for the payment of a debt, is purely a matter to be determined by their contract. Ordinarily, when a pledge of property is made to secure the payment of in-debtedness, the pledge can not be sold until after the debt is due and demand is made to redeem, and notice is given of the intention to sell. Story on Bailments, (5th ed.) sec. 310. But parties may, by contract, agree that in certain contingen-cies the pledge shall be sold before the debt is due, or that it shall be sold without previous notice, etc.; but in such case, what is the contract must be determined from the language employed, and not from a consideration of what would best subserve the interests of the creditor, for the law has no greater regard for his interest than it has for that of the debtor.

It is manifest that the words, "depreciating in market value," can have reference only to a security that becomes less valu-able in market after it is pledged than it was at the time it was pledged, and that it can have no proper application to a security the marketable condition of which has remained un-changed, but which was, at the time of the pledge, and has remained, worthless. It is true that the pledgee who inno-cently takes a worthless pledge is as much disappointed in his security and imperiled in his loan as is the pledgee who takes a security that subsequently depreciates in value; but this is precisely the condition of a man who takes a pledge under a mistake of its real value, supposing it to be adequate security when in truth it is not; and yet, in such case, the value of the security remaining the same at all times, no one could

pretend that there is a "depreciating in market value." Because Kretsinger was not authorized to sell the policy upon discovery that this stock was not genuine, it does not follow that he was without remedy. He had what the law regarded as ample remedy, and it was to that, and not to any special remedy provided by the contract, that he was authorized to resort for relief. Moreover, the rule at common law was, that the pledgee must give notice to the pledgor to redeem, before he could sell. 2 Kent's Com. (8th ed.) 759, *583; *Rozet* v. *McClellan,* 48 Ill. 345. It is obvious that the purpose of this was different from that of giving notice of sale. It was to inform the pledgor that the pledgee would then proceed to terminate all indulgence—that the pledgor must then act, or his property would be lost,—while notice of the sale was to invite competition, and thereby secure the best price attainable by a sale.

Where a sale is only to be made in event of failure to make payment at maturity of the debt, it may be that the pledgor is not entitled to a demand, for he has himself fixed a definite period for the termination of the pledge, and he should be required to act accordingly; but that reasoning is not applicable where the pledgee elects to sell the pledge before the debt is due, because of the happening of a contingency,—as, for instance, like that here,—of which the pledgor may be in profound ignorance. There, the pledgor may make no effort to redeem, simply because he may not suppose that there is the slightest reason to apprehend his property is in danger of being sold, and upon the plainest principles of justice he is entitled to be notified that he can not wait until the maturity of his debt, but that he must then redeem, if he ever intends to. Jones on Pledges, 607.

The judgment is affirmed.

*Judgment affirmed.*