Board of Education of Paris Union School District, No. 95, Edgar County, Illinois, Appellee, v. Board of Education of Non-High School District of Edgar County, Illinois, Appellant.

### Gen. No. 7,555.

1. STIPULATIONS—*exclusion of issue by stipulation.* In an action of assumpsit by a board of education for tuition of high school pupils from a nonhigh school district, plaintiff's right to recover for the use of lands and grounds is not in issue, under a stipulation conceding the right by limiting the question to be tried by the court to whether the charge for use should be based upon the original cost of "grounds, building and equipment" or the fair cash market value thereof as of a certain date.

2. STATUTES—*construction of federal emergency tax legislation not conclusive in construction of State school law.* In an action in assumpsit for tuition for high school pupils attending from a nonhigh school district, under Cahill's Ill. St. ch. 122, ¶ 104, relative thereto, the construction placed upon the U. S. War Revenue Act limiting "invested capital" to actual cost, exclusive of any appreciation, is not controlling, especially in view of the emergency character of that act, in determining whether the charge for depreciation of buildings and school equipment and for use of grounds, buildings and equipment should be based on actual cost or the fair cash market value as of the date of use thereof by such students from defendant district, notwithstanding the parties, in stipulating as to the actual cost, have used the term "invested capital," the "fair cash market value" as of the date of use having also been stipulated.

3. SCHOOLS AND EDUCATION—*use and depreciation of school property by outside pupils determinable on market value and not on cost.* In an action by a board of education in assumpsit for tuition from

pupils from a nonhigh school district, plaintiff is entitled to re-
cover for depreciation and use of school grounds, buildings and
equipment based on the fair cash market value thereof as of the
date of actual use by such pupils and is not limited to pro rata
recovery based upon the actual cost of the grounds, buildings and
equipment.

Appeal by defendant from the Circuit Court of Edgar county; the
Hon. AUGUSTUS A. PARTLOW, Judge, presiding. Heard in this court
at the October term, 1922. Affirmed. Opinion filed July 10, 1923.

SHEPHERD, TROGDON & DOLE, for appellant.

BURNIE MCCLAIN and STEWART W. KINCAID, for ap-
pellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the
court.

This action is in assumpsit, with declaration con-
sisting of the common counts, for tuition of pupils
from nonhigh school territory of Edgar county, Illi-
nois, who attend high school in Paris Union School
District during the year 1920-1921. Towards the end
of the school year in question, appellee presented to
appellant a statement of the number of pupils who
had attended the high school from nonhigh school ter-
ritory, together with an itemized statement of the cost
of maintaining the school, in which was included a
charge for use and depreciation of school plant. Ap-
pellant accepted the statement of the number of pupils
and the cost of maintaining the school, except as to
the items for use and depreciation, and paid to the
treasurer the sum of $15,151.65, and refused to pay
the remainder claimed to be due appellee on the items
for use and depreciation.

After this action was commenced, the stipulation
set out in appellant's statement was entered into from
which it will be seen that appellant now admits that
it owes appellee $1,524.42, but denies the remainder of
the amount, $3,200.30, found by the trial court to be
due appellee.

The only questions submitted to the trial court for decision were: (1) Should the depreciation of two per cent be based on the original cost of the building and equipment, stipulated at $90,000, or upon the market value of such building and equipment upon the day stipulated within the year for which tuition is claimed; and (2) should the five per cent for use of the building, ground and equipment be based on the original cost when same were acquired by the district, or upon the stipulated value of the same upon the day agreed upon, within the year for which tuition is claimed?

Section 96 of chapter 122 provides: "The tuition paid shall in no case exceed the per capita cost of maintaining the high school attended, excluding therefrom interest paid on bonded indebtedness, which shall be computed by dividing the total cost of conducting and maintaining said high school by the average number of pupils enrolled, including tuition pupils." [Cahill's Ill. St. ch. 122, ¶ 104.]

In *People v. Chicago & N. W. Ry. Co.*, 286 Ill. 384, it was held (p. 395): "The 'total cost' of maintaining such high school should include all expenses incurred by the high-school district in maintaining such high school, the rental of any buildings therefor not owned by the high-school district, and a *reasonable charge for the use and depreciation of buildings* owned by the high-school district."

Some question is raised by appellant as to the right of appellee to recover for the use of lands or grounds, inasmuch as the court in *People v. Chicago & N. W. Ry. Co., supra,* in construing the act under which this suit is brought, and defining the term "total cost," confines the term "reasonable charge for the use" to the subject of *"buildings"* and appellant contends that appellee should not be permitted to recover for the use of "land" or "ground." However, the stipulation signed and submitted by both parties was in part as follows:

"That the questions in this case to be tried by the court are:

"(1)    Shall the depreciation of two per cent be based upon $90,000, the original cost of building and equipment, or upon $153,000, the fair cash market value of the building and equipment as of May 31, 1921.

"(2)    Shall the five per cent for use be based upon $100,000, the original cost of grounds, building and equipment, or upon $173,000, the fair cash market value of the grounds, building and equipment as of May 31, 1921," so that we do not deem that that question is in this case, whatever the correct rule may be.

Appellant contends that under the United States War Revenue Act, as it relates to an income tax and war profits and excess profit, that *"invested capital"* is not based upon the present net worth of the assets as shown by appraisal, but upon actual cost, and that "appreciation of assets" cannot be included in "invested capital," quoting *La Belle Iron Works v. United States*, 256 U. S. 377, 41 Sup. Ct. 528, and appellant contends that the proper allowance for depreciation is that amount which should be set aside each year in accordance with a consistent plan by which the aggregate of such amounts for the useful life of the property will suffice, with the salvage value at the end of such useful life to provide in place of the property its cost. Article 161, U. S. Revenue Act.

Depreciation does not apply to land apart from the improvement. Article 162, U. S. Revenue Act.

It is true, that in the stipulation as to the figures of the cost of land, buildings and equipment purchased, erected and procured by appellee in 1904, the parties have made use of the term "invested capital" as of that time, but the question is still raised as to whether the statute in question is to be construed the same and operates in a like manner as the federal acts of 1918. The stipulation also covers the "fair cash market value" of the property as of the time

used.    Appellant relies substantially upon the fore-
going authorities and contends that the rate of de-
preciation and stipulated percentage value of use and
occupation should be applied to the original cost to
appellee, of the property.

As to the term "invested capital," as used in the
U. S. Revenue Acts, appellee insists that "by refer-
ring to the federal statute and the case of *La Belle
Iron Works v. United States,* cited by appellant,
wherein such statute was interpreted, it will be seen
that such statute was passed as a war measure 'on the
eve of our entry into war, and in order to provide
"a special preparedness fund" for army, navy and
fortification purposes,' and for the purpose of deter-
mining what the statute defined as 'Excess Profits'
on which such tax should be computed, the said stat-
ute provided for an excess profits tax on corporations
and partnerships equal to eight per cent of the amount
by which their net income exceeded $5,000 plus eight
per cent of the actual 'invested capital.'   In another
section of the statute for the purpose of determining
the amount of such excess tax, 'invested capital' was
defined as 'actual cash paid in.'   It appears perfectly
clear that department regulations and rules cited, were
for the sole purpose of administering the particular
statute wherein Congress has specifically defined 'in-
vested capital' as 'actual cash paid in' and had spe-
cifically fixed the same as the amount on which the
eight per cent deduction should be computed, in de-
termining how much should be called 'excess profits'
and taxed accordingly.   The act of Congress plainly
named $5,000 plus eight per cent of the 'actual cash
paid in' as the amount of the profits of corporations
and partnerships which would not be taxed, and pro-
vided that profits in excess of such amounts would be
'excess profits' and be subject to such tax," and ap-
pellee also submits "that in this case there is no ques-
tion of profit to appellee; but the questions are, shall
appellee be allowed, as a reasonable charge for the

use of the property used by appellant, five per cent of the admitted market value of the property for the year in which it is used; and shall appellee be allowed two per cent on the fair market value of the buildings and equipment for depreciation which it is admitted will occur.''

As to the income tax to determine profit, appreciation and benefit, caused by war conditions or otherwise, a certain fixed and stable period was taken as a basis to work from when no extraordinary conditions existed (1913), and differences were measured as from a later date to the conditions of that year, arbitrarily, as a fair rule for all to arrive at the changes in valuation and the fluctuations in that abnormal period. The term ''invested capital'' was defined arbitrarily for a specific purpose in extraordinary times and in regard to an entirely different subject-matter.

In all cases of the taking of private property for public use, the damages are the fair cash market value of the property taken and measured at the time of taking the property.

Property devoted to one public use and so taken under the law of eminent domain may be subjected to another public use (*Chicago, R. I. & P. R. Co. v. Town of Lake,* 71 Ill. 333; *Lake Shore & M. S. Ry. Co. v. Chicago & W. I. R. Co.,* 97 Ill. 506; *Pittsburgh, Ft. W. & C. Ry. Co. v. Sanitary District,* 218 Ill. 286; *Davis v. Nichols,* 39 Ill. App. 610), and in all such cases of taking property, impressed with one public use, the damages for property taken is the fair cash market value of the property taken at the time of taking the same.

All of these matters are within legislative control the same as the statute in question, the validity of which is not attacked, and in none of the cases cited is it suggested that one corporation having acquired property by purchase or eminent domain should yield it to another corporation, at its cost price, in case it had increased in value.

Section 1 of chapter 80, Rev. St. [Cahill's Ill. St. ch. 80, ¶ 1], provides where the owner, etc., may sue for and recover rent, "or a fair and reasonable satisfaction for the use and occupation," of premises by debt or assumpsit, and section 96 of chapter 122 [Cahill's Ill. St. ch. 122, ¶ 104] seems to provide a case where a suit may be brought to recover a demand, in the nature of rent or for use and occupation.

It is held in Cyc., vol. 39, p. 870: "That the landlord can recover a reasonable consideration for the use and occupation of the premises, taking into consideration the purpose for which they are best adapted, although they are actually used for another purpose," and counsel have quoted cases (*National Bank of Illinois v. Baker*, 27 Ill. App. 356; 128 Ill. 533), holding that depreciation, as defined, means a loss in value of some destructible property, over and above current repairs, and in the contract in question it was held to refer to a future time, with reference to the time the contract was entered into. No definition we have been able to find makes any reference to "first cost" or to "cost" at any particular time, as a basis for computing depreciation.

It is suggested that school districts, in many cases, are donees in charitable donations, and receive gifts of money, sites, buildings and equipment, and that under the rule contended for by the appellant, these would operate to the benefit of the nonhigh school district the same as to the donee intended. If the rule should be established, as contended for by appellant, it could be equally as cogently contended that the serving district had misappropriated its funds, entered into improvident contracts, paid exorbitant prices for its site, building and equipment and that the "cost price" of such property was grossly unfair and unjust.

It would seem beyond question that the depreciation value of the property should be based upon its varying value from year to year, in order to arrive at a result that would replace the properties, and we are

unable to arrive at any fair and just method of computing the value of rent for use and occupation, when it is to be computed upon a percentage of value basis, except to make the computation upon the value at the time of the use.

There being no error in the judgment of the court below, the same is affirmed.

*Affirmed.*