Submitted on brief April 2, writ dismissed April 17, 1917.

## SCHOOL DISTRICT No. 24 v. SMITH.

### (164 Pac. 375.)

**Schools and School Districts—District Expenses—Statutory Construction.**

1. Under General Laws 1915, page 331, Section 4, providing that cost of educating a high school pupil be fixed by dividing the cost of maintaining the schools by the average daily attendance, etc., interest items paid on debt incurred for construction of the school cannot be included in the maintenance charges.

Original proceeding in Supreme Court in *mandamus* on amended writ.

An original *mandamus* proceeding by School District No. 24 of Marion County, Oregon, against W. M. Smith, County School Superintendent of Marion County, Oregon. The demurrer filed by defendant sustained and amended writ dismissed. Submitted on brief without argument under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi). Dismissed.

In Banc. Statement by MR. CHIEF JUSTICE Mc-BRIDE.

This matter was originally heard in this court, and is reported in 82 Or. 443 (161 Pac. 706). By an amended writ it is alleged that the district was compelled to borrow $70,000 of the $135,000 used to construct the building; that there has been paid during the school year of 1916 the sum of $3,500 as interest on the sum so borrowed, and that the defendant refuses to allow such sum as a part of the amount "expended by the high school district for maintaining high school" during that year. This is the sole issue raised by the amended writ, to which defendant demurs.          AMENDED WRIT DISMISSED.

For petitioner there was a brief over the name of *Messrs. Smith & Shields.*

For defendant there was a brief over the names of *Mr. Max Gehlhar,* District Attorney, and *Mr. James G. Heltzel,* Deputy District Attorney.

Opinion by Mr. Chief Justice McBride.

1. The words "maintain," "maintenance," and "maintaining" have such varied meanings in statutes that no mere lexicographical definition will fit every particular statute. Their meaning in each case is to be derived from a consideration of the whole statute, the circumstances under which it was enacted, and the object to be attained with a view to ascertain that somewhat elusive thing called the "intent" of the lawmaker. In our original opinion we stated that the word "expended" means "paid out, disbursed"; but this language was applied to the matter then before the court and, of course, with reference to moneys expended for the purpose of maintaining the school. There is a distinction to be drawn here between maintenance and construction. It has been held in many cases that a statute authorizing a corporation or municipality to "maintain" a building, a street, or a road does not confer authority to construct such building or other improvement: *Barber Asphalt Paving Co.* v. *Hezel,* 155 Mo. 391 (56 S. W. 449, 48 L. R. A. 285); *Moorhead* v. *Little Miami R. Co.,* 17 Ohio, 340; *In re Warren Insane Hospital,* 15 Pa. Co. Ct. Rep. 83.

"The word 'maintain' does not mean to provide or construct, but means to keep up, to keep from change, to preserve": Worcester's Dict.

"To hold, to keep in any particular state or condition, to keep up": Webster's Dict.

From these definitions it would seem that the cost of constructing a school building could hardly be construed as part of the expense of maintaining a school in a building already constructed. The statute now under consideration presupposes a high school building already erected: it does not require any district to erect one to accommodate pupils from any other district. Indeed the statute might well be called permissive in its character, and it was probably not in the legislative mind that the high school districts provided with buildings would increase their capacity or employ an extra force of instructors for the accommodation of pupils of other districts who might wish to take advantage of their facilities, nor is it likely that the petitioner here has employed an additional teacher or incurred a dollar of expense in excess of that which it would have expended if no outside pupils had attended its high school, unless it be a very trifling amount expended for supplies. It is not every dollar paid out during the year on account of the construction of a high school building that may be said to be a part of the expense of maintaining the school. Such a theory would lead to results so absurd that it cannot be held to have been within the legislative intent. If instead of merely paying the interest upon the debt the principal had been discharged upon that theory, the whole $70,000 would have to be charged up as a part of the maintenance of the high school, because it was money expended during that year. It seems to be assumed by petitioner that the $70,000 indebtedness incurred in construction is something in the nature of a lien against the building and that the school cannot be held unless the interest is kept up, and that for this reason it is in a way a maintenance charge; but this is not the case. Should a default in

interest occur, there is no law by which the building could be taken. But it is needless to speculate upon contingencies which in the nature of things are not likely to arise. It was not the purpose of the law that high school districts should make a profit off of their less fortunate neighbors, or off of the general taxpayers; neither was there a purpose to compel outside taxpayers to contribute directly or indirectly to the erection of buildings. It evidently was the intention to permit districts having high school buildings to enter outside pupils and to receive from the educational fund of the county the actual cost of educating them, and nothing more. This includes salaries of teachers and caretakers for the building, supplies of a temporary character, lights, telephones, water, insurance, and such repairs as are necessary to keep the building in a state of efficiency, but it does not include money paid for construction nor interest upon money borrowed for such purpose.

The demurrer is sustained and the amended writ dismissed.　　DISMISSED.