(No. 12342.—Judgment affirmed.)

THE PEOPLE *ex rel.* E. F. Goodell, County Collector, Appellee, *vs.* THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Appellant.

*Opinion filed December 18, 1918—Rehearing denied Feb. 12, 1919.*

1. CONSTITUTIONAL LAW—*it is the duty of the legislature to provide for the maintenance of high schools.* High schools are as much a part of our system of free schools as district or grade schools, and it is the duty of the legislature to provide for the establishment and maintenance of such high schools.

2. SAME—*limitations on power of legislature to form school districts.* Under the constitution the legislature has power to provide for the formation of school districts whenever, in its discretion, it should be done, subject only to the constitutional limitations as to the purpose of such districts and that the plan shall be uniform and apply uniformly to all citizens of the State similarly situated.

3. SAME—*Non-High-School District act of 1917 operates uniformly.* The Non-High-School District act of 1917 (Laws of 1917, p. 737,) creates districts to include all territory in each county not included in a township high-school district, community high-school district or a district maintaining four years of high school, and the act is therefore uniform throughout the State in the matter of determining the boundaries of such districts.

4. SAME—*legislature has power to provide means to maintain non-high-school districts.* The legislature having the power to authorize the formation of non-high-school districts, as provided in the act of 1917, has the power to impose the debt incident to the maintenance of such districts and to provide the means of discharging that debt, subject to the requirements of the constitution regarding uniformity and distribution of taxation.

5. SAME—*Non-High-School District act does not violate rule of local self-government.* The legislature has the power to designate the board of education of a non-high-school district organized under the act of 1917 as the agent to levy the tax on the property of the district, and as such board is selected by the voters of the district the act does not violate the rule of local self-government.

6. SAME—*the Non-High-School District act of 1917 is not discriminatory.* The taxes provided for by the Non-High-School District act of 1917 are levied on the property of such district, only, and the fact that tuition to be paid to a high-school district for

non-high-school district pupils shall not exceed the *per capita* cost of maintaining the high school attended, excluding interest paid on bonded indebtedness, does not render the act discriminatory. (*People* v. *Moore,* 240 Ill. 408, distinguished.)

7. SAME—*the legislature has power to provide for transfer of pupils.* The legislature has power to provide for the transfer of pupils from one school district to another and to prescribe the terms and conditions, subject to the constitutional requirement that the same privilege must be extended to all pupils similarly situated.

8. SAME—*what is not an unreasonable basis for computing tuition.* The provision of the act of 1917 fixing the tuition for non-high-school district pupils on the basis of the cost of maintaining the high school attended, excluding interest paid on bonded indebtedness, is not unreasonable; nor is it discriminatory, as non-high-school district pupils and pupils of the high-school district are not similarly situated.

9. SAME—*act of 1917 does not make tax-payers of high-school district contribute to corporate purposes of non-high-school district.* Under the Non-High-School District act of 1917 all of the taxes for the expenses of such a district, including tuition, are levied on the property of the non-high-school district, and the fact that the tuition is based on the *per capita* cost of maintaining the high school attended, less interest paid on bonded indebtedness, does not make the tax-payers of the high-school district contribute to the corporate expenses of the non-high-school district. (*Board of Education* v. *Haworth,* 274 Ill. 538, distinguished.)

10. SAME—*what does not render Non-High-School District act of 1917 discriminatory.* The fact that under the Non-High-School District act of 1917 pupils from non-high-school districts may select a high school without the consent of the county superintendent of schools, whereas pupils in a high-school district must obtain such consent before attending a high school outside of the district, does not render the act discriminatory.

11. SAME—*provision of act of 1917 for paying cost of ballots for first election is valid.* The fact that the Non-High-School District act of 1917 requires the cost of the ballots for the first election to be paid by the county does not render the act invalid, as the election is conducted by the county superintendent of schools, and it is proper that the cost of the ballots be paid by the county as part of the expense incident to the office of the superintendent.

12. SAME—*Non-High-School District act of 1917 does not violate Federal constitution.* The Non-High-School District act of 1917 is not in contravention of the Federal constitution as being

286 — 25

a taking of the property of a tax-payer without due process of law or as denying equal protection of the laws, as the levy of a tax, where opportunity is given the tax-payer to object to the tax and have a hearing in court, is due process of law.

13. SCHOOLS—*act of 1917 does not authorize pupil to select a high school in another State.* The Non-High-School District act of 1917 does not authorize a pupil from a non-high-school district to select for attendance a high school in another State.

14. SAME—*what is not required by the act of 1917.* The Non-High-School District act of 1917, when considered in connection with other provisions of the School law, does not require that a board of education in a high-school district shall admit non-high-school district pupils in such numbers as to prevent pupils of the high-school district from receiving advantages of the high school.

15. SAME—*what is included in estimating cost of maintaining a high school.* In estimating the cost of maintaining the high school attended it is necessary to include the rental of any buildings used for the high school and not owned by the high-school district, a reasonable charge for the use and depreciation of its own buildings, and all expenses incurred by the high-school district in maintaining the high school, the interest on bonded indebtedness being excluded in order to avoid duplication of the charge for use and depreciation of the buildings owned by the district.

APPEAL from the County Court of Kane county; the Hon. S. N. HOOVER, Judge, presiding.

CHARLES A. VILAS, (JAMES C. DAVIS, of counsel,) for appellant.

CHARLES L. ABBOTT, State's Attorney, and ROY R. PHILLIPS, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a judgment of the county court of Kane county overruling objections of the appellant to the application of the county collector for judgment and order of sale of appellant's property for delinquent taxes for the year 1917. The only question involved in the appeal is the constitutionality of sections 93, 94 and 96 of "An act to establish and maintain a system of free schools,"

as amended by an act of the legislature approved June 22, 1917. (Laws of 1917, p. 737.) The sections involved are as follows:

"Sec. 93. In each county of the State, all the territory of the county not included in a township high-school district, or a community high-school district, or a district maintaining a recognized four year high school, shall be organized into a non-high-school district for the purpose of levying a tax to pay the tuition of all eighth grade graduates residing in such non-high-school district, including pupils attending a recognized two or three year high school conducted by a local school district. The board of education for said non-high-school district shall be constituted as follows: The county superintendent of schools shall be an *ex-officio* member of said board and secretary thereof, but he shall have no vote. The remaining members of the non-high-school district board shall be elected as follows: On or before August 1, 1917, the county superintendent of schools shall call an election for the purpose of electing three members of the board of education of said non-high-school district, and shall designate a sufficient number of precincts and polling places and select the judges and clerks for such election. At the first meeting of said board the length of the term of each of the said three elected members shall be determined by lot. One of said members shall serve for one year, one for two years, one for three years from the third Saturday of April next preceding their election. At the expiration of the term of office of any elected member or members a successor or successors shall be elected who shall serve for three years. Each subsequent election shall be held on the third Saturday in April. In case of a vacancy in the said board of education the remaining members shall fill the vacancy by appointment until the next annual election. Within ten days after the election the members of said board of education shall meet and organize by electing one of their

number president. The nominations of candidates for members of the board of education for the non-high-school district shall be made only by petition. All nominating petitions shall be filed with the county superintendent of schools at least fifteen days before the date of election. All petitions shall be signed by at least fifty legal voters of the district. The names of the candidates shall be printed on the ballot in the order in which the petitions are filed with the county superintendent of schools. The first election for members of the board of education for the non-high-school district shall be held at the polling places of the districts comprising the non-high-school territory and the judges and clerks of the district election boards shall receive and canvass the ballots and seal and mail them to the county superintendent of schools. The county superintendent of schools shall file the results of said election with the county clerk. The ballots to be used at the election held for the selection of members of the board of education of the non-high-school district shall be furnished by the county, and shall be in the form prescribed by the county superintendent of schools. Voters shall make a cross-mark in the square preceding the name or the names of the candidates of his choice and the ballots shall be so counted. At all subsequent elections in the non-high-school districts the vote shall be canvassed by the non-high-school board and the results filed with the county clerk. The polling place for subsequent elections in the non-high-school district shall be designated by the board of education of the non-high-school district. The manner of holding elections shall be governed by sections 126 and 126a of the general School law, except where otherwise specifically directed herein. None of the provisions of this act regarding the establishment of non-high-school districts shall be construed to prevent the organization of any territory of such non-high-school districts, into township or community high school, school districts.

"Sec. 94. The board of education of a non-high-school district shall have the following powers and it shall be its duty: First, to levy a tax annually upon all the taxable property of such non-high-school district, not to exceed one per cent upon the valuation to be ascertained by the last assessment for State and county purposes, for the purpose of paying the tuition of all eighth grade graduates residing within such non-high-school district, attending any two, three or four year recognized high school. Such tax levy shall be certified and returned to the county clerk on or before the first Tuesday in October. The certificate shall be signed by the president and secretary of the board and may be in the following form, to-wit:" (setting out the form of the certificate.) .

The second and third clauses of the section provide the manner of payment of tuitions and reports of the board. The fourth clause provides as follows: "Fourth, to pay election expenses and other necessary incidental expenses out of the funds of the non-high-school district."

"Sec. 96. Upon the approval of the county superintendent of schools any high school pupil may attend a recognized high school more convenient in some district other than the high school-district in which he resides and the board of education of the high-school district in which said pupil resides shall pay the tuition of such pupil, provided, said tuition shall not exceed the per capita cost of maintaining the high school attended. Any eighth grade graduate residing in a non-high-school district may attend any recognized two, three or four year high school, and his tuition shall be paid by the board of education of the non-high-school district in which he resides. An eighth grade graduate in the meaning of this act is any person of school age who gives satisfactory evidence of having completed the first eight grades of school work by presenting a certificate of promotion issued by the home school board, or by passing an examination given by the county superintend-

ent of schools or by passing an examination given by the school attended. A recognized high school in the meaning of this act is any public high school providing a course of two or more years of work approved by the superintendent of public instruction. The tuition paid shall in no case exceed the per capita cost of maintaining the high school attended, excluding therefrom interest paid on bonded in-debtedness, which shall be computed by dividing the total cost of conducting and maintaining said high school by the average number of pupils enrolled, including tuition pupils."

Appellant contends that section 93 of the School law, as amended by the act in question, is unconstitutional for the reason that it arbitrarily requires the levy of a tax without a vote of the people to be taxed; that it violates the rule of local self-government and imposes a debt on the people without their consent; that sections 94 and 96 are invalid for the reason that they violate the rule of uniformity and equality in taxation and discriminate in favor of the tax-payers and pupils of the non-high-school districts and against the tax-payers and pupils in the high-school districts.

The constitution of the State, by section 1 of article 8, provides that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." This section of the constitution is a mandate to the legislature, in that it requires that body to provide a thorough and efficient system of free schools. It is likewise a limitation on the power of the legislature, in that it limits the purpose of the system of free schools to be established to that of providing a good common school education to all the children of the State. The primary purpose in the organization of school districts is to carry out this mandate of the constitution. The education to be provided thereunder is not limited to the primary and intermediate grades but includes a high school education. The

high school is as much a part of our system of free schools
as the district or grade schools.   (*Cook* v. *Board of Di-
rectors,* 266 Ill. 164; *Russell* v. *High School Board,* 212
id. 327; *People* v. *Moore,* 240 id. 408.)   It follows, there-
fore, that the duty rests upon the legislature to provide for
the maintenance of such high schools.   How this is to be
done is a matter which rests in the discretion and wisdom
of the legislature, subject to the requirements of the con-
stitution regarding uniformity and against discrimination.
Under the mandate of the constitution the legislature has
power to form school districts whenever, in its discretion,
such should be done, subject only to the limitation of the
constitution as to the purpose of such districts, and the
further limitation that the plan thereof be uniform and ap-
ply uniformly to all citizens of the State similarly situated.
*Speight* v. *People,* 87 Ill. 595; *Fuller* v. *Heath,* 89 id. 296;
*Land Comrs.* v. *Kaskaskia Commons,* 249 id. 578; *People*
v. *Chicago and Illinois Midland Railway Co.* 256 id. 488;
*People* v. *Weis,* 275 id. 581.

The non-high-school districts created by the act are made
to include all the territory in each county not included in
a township high-school district, community high-school dis-
trict or a district maintaining four years of high school.
Such a district is therefore a defined territory capable of
definite description, and in the determination of the bound-
aries of such district the application of the act is uniform
throughout the State.   The legislature having power to
form such school districts, it follows that it has power to
impose the debt incident to their maintenance and to pro-
vide the means of discharging that debt, subject to the
requirements of sections 1 and 6 of article 9 of the con-
stitution, regarding uniformity and distribution of taxation.

Section 93 creates a body styled a board of education
in such non-high-school districts, and while the principal
purpose and function of this board is to levy a tax to pay
the tuition of certain pupils, such purpose lies within the

mandate of the constitution providing a system of free schools and is a valid purpose. It is likewise within the province of the legislature to delegate this power to such a board whenever there is the necessity for such a tax by reason of a debt having been created. (*Dunnovan* v. *Green,* 57 Ill. 63.) In that case it was held that where, as under the constitution of 1848, a duty was cast upon the legislature to provide for the payment of lawful indebtedness the legislature is free to select the agents who shall impose and collect the tax. An act designating the State Auditor as the one to levy the tax was there sustained. In this case the legislature had the power to designate the board of education of non-high-school districts as the agent to levy this tax. This board of education is selected by the voters of the non-high-school district which it represents. This act does not, therefore, violate the rule of local self-government. If it be held that such a law is invalid because it imposes a debt, and a tax to pay the same, without a vote of the people of the district, then no tax for school purposes will be valid without such vote. Section 93 is not open to this objection. The mandate of the constitution that the legislature maintain a system of free schools presupposes the power by the legislature to carry out that mandate. To hold that it does not have such power would be to attempt to render the constitution nugatory.

It is contended that sections 94 and 96 are invalid for the reason that they violate the rule of uniformity and equality in taxation, discriminating against the tax-payers of the high-school district in favor of the tax-payers of the non-high-school district. The tax provided for in this act is to be levied against the property of the non-high-school district, only. Property in high-school districts is in no manner subject to such tax. But, it is urged, the discrimination in this law arises from the provision regarding the tuition to be paid to the high-school district for non-high-school pupils. Section 96 of the act provides that

·such tuition shall not exceed the per capita cost of maintaining the high school attended, excluding therefrom interest paid on bonded indebtedness, and appellant contends that this provision discriminates against the pupil and tax-payer in the high-school district in that, while the non-high-school district pays only such per capita cost, the tax-payer of the high-school district must pay, in addition thereto, the expense necessary to erect and equip such buildings and pay the interest on bonds therefor, and that the pupil of the high-school district pays more for his education than the pupil of the non-high-school district, and that the act therefore violates the constitutional provision requiring uniformity. Appellant cites in support thereof the case of *People v. Moore, supra.* In that case the constitutionality of the School law, as amended by the act approved May 25, 1907, was attacked. That act provided that the tuition of pupils from districts not maintaining high schools should be paid from the funds of the district of the pupils' residence only in cases where the parents or guardians of such pupils are unable to pay such tuition. This was held to be in violation of the constitutional requirement of uniformity, in that it gave an education to different pupils in the same district at different prices. This court on page 412 said: "The high school, as well as the lower grades, must be open to all children in the district of school age free, so that all shall have the right to an equal education therein. If this right is extended to the children of other districts it must be upon the same terms to all similarly situated." In that case the law provided that pupils similarly situated were to be given an education on different terms. Such objection does not obtain here. Each pupil residing in the high-school district receives his education on the same terms as all other pupils who reside in such high-school district. Each pupil in the non-high-school district is to receive his education on the same terms as all pupils in such non-high-school district,—that is, on paying the per capita cost of

maintenance of the high school attended. The fact that the per capita cost of the pupil residing in the high-school district may be more than the per capita cost required of the non-high-school district pupil does not violate the rule regarding uniformity in the application of a law to all similarly situated. The pupil within the high-school district and the pupil without such district are not similarly situated. The requirement of the constitution is met when such law applies uniformly to all pupils similarly situated. The per capita cost of maintenance is not the test of the uniformity in the application of laws relating to the maintenance of free schools. To so hold would be to say that the per capita cost of maintenance must be the same in all school districts. Such would produce an absurd result.

The School law has for a great many years provided for the transfer of pupils from the school of one district to that of another. The children of school age sustain no relation to the high schools of the State different from that which they sustain to any of the grades or other departments of the school. All together constitute the system of free common schools of the State. (*Russell* v. *High School Board, supra; People* v. *Moore, supra.*) The terms and conditions upon which the transfer of pupils from one district to another shall be permitted are matters for the determination of the legislature, subject to the requirement that the same privilege must in all cases be extended equally to all children similarly situated. *People* v. *Moore, supra; Cook* v. *Board of Directors, supra.*

In the case of *Cook* v. *Board of Directors, supra,* the act of 1913 was attacked. The provisions of that act relating to the transfer of pupils and payment of tuition were practically the same as in the case at bar, except that interest on bonded indebtedness was not excluded from the computation of tuition. This court in that case sustained the act of 1913 as constitutional, saying, on page 169: "Since the high school is a part of our system of public schools

the benefits may properly be opened to all of the children of the State. It is impracticable to maintain a high school in every school district, but it is not impossible to give each child of the State that has finished the eighth grade work the benefit of a high school education by transferring such pupil to some convenient district wherein a high school is maintained."

That a reasonable tuition shall be paid for non-high-school pupils has been recognized in this State. The right of the legislature to fix such reasonable tuition and the means of its payment, subject to the requirement that the privileges thereunder be extended equally to all children similarly situated, is likewise well established. *People* v. *Moore, supra; Cook* v. *Board of Directors, supra.*) The act providing the tuition in this case meets these requirements. Section 96 of the act provides that the cost of maintenance, upon which the computation of the tuition is based, shall be "the total cost of maintaining such high school," less interest paid on bonded indebtedness. It is evident that the legislature intended by this provision to secure as even a distribution of cost as it is possible to obtain; that the "total cost" of maintaining such high school should include all expenses incurred by the high-school district in maintaining such high school, the rental of any buildings therefor not owned by the high-school district, and a reasonable charge for the use and depreciation of buildings owned by the high-school district; and that interest paid on bonded indebtedness should be excluded from such computation to avoid duplication, which would necessarily result if interest on bonded indebtedness as well as said use and depreciation was to be charged. The computation of the tuition on a basis excluding interest on bonded indebtedness does not, therefore, create an inequality.

It is further contended that in view of the fact that the tax-payers of the high-school districts must pay this interest and the cost of buildings, the act, by reason of so

fixing the tuition, requires them to indirectly contribute to the tuition of pupils residing in districts maintaining no such high schools and thereby to contribute to the local and corporate purposes of another corporate body or district, and as an authority for such contention the case of *Board of Education* v. *Haworth,* 274 Ill. 538, is cited. In that case the act under consideration was the act of 1915, which, in effect, provided for the payment of such tuition from the State school fund. The tuition in said act was not to exceed the per capita cost of maintaining the high school attended. That act was in that case held unconstitutional for the reason that the State school fund was levied on all property in the State, that within as well as that without high-school districts, and to use a portion of such fund for the education of children of districts outside the high-school districts was to use a tax on property of the high-school districts to contribute to the corporate purposes of such outside districts. That case is to be distinguished from the case at bar. There, as we have seen, a portion of the tax with which these tuitions were paid was by said act levied on the property of the high-school district which such tuition pupil attended. In the instant case none of such tax is paid by the tax-payers of the high-school district but all is levied on the property of the non-high-school district for the corporate purposes of such district and expended for such corporate purposes. Such tax is not, therefore, being used for the corporate purposes of a district other than that in which it is levied. The fact, if it were a fact, that some other tax,—that is, the tax levied on the property within the high-school district,—was being indirectly used to pay for the corporate purposes of a non-high-school district is beside the issue here, where the objection is to the non-high-school district tax. The fact that this act, in effect, requires the tax-payers of the high-school districts to pay the cost of buildings and interest on bonded indebtedness does not establish that the

school tax in such high-school districts is thereby used for the corporate purposes of another district. Such tax is levied for the corporate purposes of the high-school districts and expended for such purposes, and the fact that pupils from outside districts attend such high schools does not, of itself, render invalid such tax.

It is further contended that this act is discriminatory in that it requires pupils in high-school districts to secure the consent of the county superintendent of schools before they are permitted to attend a high school in another district, while the pupils of the non-high-school districts may attend where they please. We are unable to agree with this contention. Pupils within high-school districts are afforded a high school education within those districts while pupils from non-high-school districts must go out of such districts to secure a high school education, and it is not an unreasonable restriction to require that in case pupils within a high-school district desire to attend elsewhere the consent of the county superintendent of schools must first be had thereto. Furthermore, the law applies alike to all high school pupils within high-school districts, and, therefore, cannot be said to be discriminatory.

But it is further urged that non-high-school pupils, by section 96 of this law, will be allowed to overcrowd those high schools which, by reason of the class of work done, are superior to other high schools. The act in question is an amendatory act and is to be read in connection with other sections of the School law *in pari materia.* Section 115 of the School law provides: "The board of school directors shall be clothed with the following powers: * * * Fourth, to assign pupils to the several schools in the district; to admit non-resident pupils when it can be done without prejudice to the rights of resident pupils," etc. Section 127 provides that boards of education shall have all the powers of school directors and are subject to the same limitations. Considering section 115 in connection

with section 96 and other parts of the School law related thereto, it is evident that the legislature did not intend that the board of education in a high-school district should be required to admit pupils from non-high-school districts in such numbers as to prevent resident pupils from receiving the advantages of the free common school education which' the law contemplates, nor does such a situation lie within the range of probabilities.

It is also objected that non-high-school pupils are privileged by section 96 to attend schools in other States and that their tuition must be paid from the non-high-school tax. We do not think so. As we have seen, our School law is for the purpose of providing a general system of free schools throughout the State. The right to the transfer of pupils from one district to another is a right of transfer within such system and consequently within the territory covered by that system. It follows that section 96 does not give the right to a pupil from a non-high-school district to choose a high school without the State.

It is also contended that this law is invalid for the reason that it requires the county to furnish the ballots for the first election of boards of education in such non-high-school districts. This contention is without merit. This election is to be conducted by the county superintendent of schools, who is a county officer, and the cost of the ballots is properly paid by the county as a part of the expense incident to his office.

Lastly, appellant contends that this act is in violation of section 2 of article 2 of the constitution of this State and the fourteenth amendment to the constitution of the United States, in that it takes appellant's property without due process of law and denies it the equal protection of the laws. This contention is likewise without merit. If such were true no tax for school purposes could be held valid. It has been established in this State, as well as in the courts of the United States, that the levy and collection

of a tax, where opportunity is had to appear in a court of law and to object to the same, is "an orderly proceeding based on notice and opportunity to be heard before a court having jurisdiction," and is therefore due process of law. *People* v. *Cohen,* 219 Ill. 200; *Gallup* v. *Schmidt,* 183 U. S. 300.

For the reasons herein given the judgment of the county court will be affirmed.              *Judgment affirmed.*