Board of Education in and for School District of City of Rockford, Illinois, Otherwise Known as School District No. 205 of Winnebago County, Illinois, Appellant, v. Board of Education of Non-High School District No. 206 of Winnebago County, Illinois, Appellee.

Gen. No. 9,912.

October term, 1943. Heard in this court at the October term, 1943. Opinion filed December 28, 1943.

CHARLES H. DAVIS, of Rockford, for appellant.

Hyer & Gill, of Rockford, for appellee.

Mr. Justice Dove delivered the opinion of the court.

Appellant sued appellee in the circuit court of Winnebago county to recover the sum of $4,329.07, balance on a claim against appellee for tuition for the 1941–1942 school year, under section 96 of the School law (Ill. Rev. Stat. 1941, ch. 122, par. 104 [Jones Ill. Stats. Ann. 123.111]). The sum sued for represents depreciation charged on appellant's buildings and equipment, allocable to that part of the cost thereof paid by the Federal Government under a Public Works Administration (P. W. A.) grant. Appellee's motion to strike the amended complaint was sustained and the suit was dismissed at appellant's cost, and the plaintiff appeals.

Section 96 of the applicable statute provides that any eighth grade graduate of a non-high school district may attend a high school in another school district, and that his tuition shall be paid by the board of education of the non-high school district in which he resides. The applicable portion of the section of the statute in force during the 1941–1942 school year, read as follows:

"The tuition paid shall in no case exceed the per capita cost of maintaining the high school attended, excluding therefrom interest paid on bonded indebtedness which shall be computed by dividing the total cost of conducting and maintaining said high school by the average number of pupils enrolled, including tuition pupils."

A large number of pupils from appellee non-high school district attended the 9th, 10th, 11th and 12th grades of a junior high school and two senior high schools in appellant high school district for the school year ending June 30, 1941. These school buildings were constructed and equipped immediately prior to the 1940–1941 school year. Of the total cost of

$3,215,606.53, the P. W. A. paid 45 per cent or $1,447,022.94 and appellant paid the remaining 55 per cent or $1,768,583.59, by the proceeds of a bond issue. That portion of the total depreciation allocated to cost paid by the P. W. A. was $32,021.38. Of this sum, $4,329.07 was charged to appellee and was based on the proportion of the number of pupils from appellee non-high school district to the total number of pupils. The rate and method of computing the depreciation is not questioned.

The total amount of the claims for tuition, as corrected, was $91,255.55, which included all depreciation charges, both the amount allocated to the 55 per cent of cost paid by the high school district and the 45 per cent paid by the P. W. A. grant. After the corrections were made, upon a check and audit of the claims, appellee approved, allowed and paid thereon the sum of $86,926.48, refusing to pay only the sum of $4,329.07 allocable to the depreciation charged to it on account of the P. W. A. grant.

Appellee's contention is that under the quoted portion of section 96, depreciation is not a proper item to be included in computing the charge for tuition, and, that in any event, depreciation allocable to donated capital is not only improper, but inequitable.

In *People v. Chicago & N. W. Ry. Co.,* 286 Ill. 384, (394, 395), the railroad company appealed from an order of the county court of Kane county overruling tax objections. The question involved was the constitutionality of sections 93, 94 and 96 of the School law. Section 96 of the 1913 act was amended in 1939. In construing that portion of the section above quoted, and after referring to *Cook v. Board of Directors School Dist. No. 80,* 266 Ill. 164, the court on pages 394 and 395 of the opinion said:

"The provisions of that act (the act of 1913) relating to the transfer of pupils and payment of tuition were practically the same as in the case at bar, except

that interest on bonded indebtedness was not excluded from the computation of tuition. . . . It is evident that the legislature intended by this provision to secure as even a distribution of cost as it is possible to obtain; that the 'total cost' of maintaining such high school should include all expenses incurred by the high school district in maintaining such high school, the rental of any buildings therefor not owned by the high school district, and a reasonable charge for the use and depreciation of buildings owned by the high school district; and that interest paid on bonded indebtedness should be excluded from such computation to avoid duplication, which would necessarily result if interest on bonded indebtedness as well as said use and depreciation was to be charged. The computation of the tuition on a basis of excluding interest on bonded indebtedness does not, therefore, create an inequality.''

In the later case of *Board of Education of Earlville Community High School Dist. No. 380 v. Board of Education of Non-High School Dist. of LaSalle County,* 343 Ill. 464, 469, the plaintiff claimed and the trial court allowed as a part of the tuition, an item of $3,500 for use and depreciation of the school building. Of this item, one half was for use and the other half for depreciation. On appeal appellant conceded that depreciation is a proper item in determining the cost of maintaining a high school building and the court in the course of its opinion at page 469 said:

''The appellee owned the school building, and from the exclusion, by the statute, of interest on bonded indebtedness, the implication follows that, in ascertaining the cost of conducting and maintaining the high school, a charge for the use of the building may not be made. To maintain means to hold or keep in a particular state or condition, especially in a state of efficiency or validity; to support, sustain, or uphold; to keep up; not to suffer to fail or decline. (Webster's

New Int. Dict.) The maintenance of a high school building does not, under section 96 of the School law, authorize a positive charge for the use of the building in computing the tuition to be paid for the pupils attending the high school from a non-high school district. Accordingly, as against the appellant, the sum of $1750 for the use of the building should have been omitted from the cost of conducting and maintaining the high school of the appellee for the year 1926–1927.''

While the question involved in this case was not at issue in the *Earlville* case it is to be observed that in *People v. Chicago & N. W. Ry. Co.*, 286 Ill. 384, the quoted language of the court was one of the reasons for holding that the quoted provisions of section 96 met the constitutional requirement for extending equal privileges to all children similarly situated.

As was said in *Board of Education v. Board of Education*, 343 Ill. 464 at page 467, ''It appears that it was the legislative intent that such cost (of conducting and maintaining a high school) should be based upon and determined by two elements,—first, the expense of conducting or operating the school, and second, the maintenance of the school property.''

It is obvious that the ''cost of maintaining the high school'' mentioned in the statute, is a more comprehensive term than the cost of maintaining a school building, and necessarily includes the construction or acquisition and the maintenance of a school building by the high school district, or the rental of a building not owned by it and it is equally plain that depreciation of a building owned by the school district necessarily enters into the cost of maintaining the school. Outside of the salvage value at the expiration of the useful life of the building, the money spent for its construction or acquisition is gone, beyond any power of the school district authorities to recover any part of it. We are not concerned with the theory and prac-

tice of accounting by business and industrial enterprises, in setting up depreciation charges and reserves to accumulate a replacement fund, to be used at some future undetermined time, as discussed in *Lindheimer v. Illinois Bell Tel. Co.*, 292 U. S. 151, 78 L. Ed. 1182 (1192, 1193), and *Detroit Edison Co. v. Commissioner of Internal Revenue*, 319 U. S. 98, 87 L. Ed. 1286, relied upon by appellee. Those factors, as employed by such enterprises, are not analogous to the methods of accounting and of raising funds, by which school districts are governed through express statutory provisions. The sole question before this court is the interpretation of the law applicable to school districts, and the cases relied upon by appellee are of no assistance in that behalf.

School districts can enforce the raising of their revenues only by the levy of taxes. It is well settled that school boards and other taxing authorities have no power to make a levy to accumulate a fund for use at some undetermined future time. (*People v. Baltimore & O. S. W. R. Co.*, 366 Ill. 318, 325; *People v. New York, C. & St. L. R. Co.*, 353 Ill. 518, 523; *Cleveland, C., C. & St. L. R. Co. v. People ex rel. Selby*, 208 Ill. 9, 14.) Consequently, there is no process of accounting by which a school district can accomplish that end, but there is no prohibition against using depreciation as a current expense, and that is the practice generally employed, as in the case at bar. This practice is sanctioned by the fact that depreciation occurs currently each year, and under the last two cases above cited, it could not be carried otherwise than as a current expense. New buildings are constructed by the proceeds of bond issues, for which the statute makes express provision.

Appellee's criticism of the holding in *People v. Chicago & N. W. Ry. Co.*, 286 Ill. 384 that excluding interest on bonded indebtedness avoids duplication, is without merit. Depreciation must be carried as a

current charge, and if interest on bonded indebtedness for the construction of the building is also carried as a current charge, there would be a duplication.

In *School Dist. No. 24 v. Smith,* 82 Ore. 443, 161 Pac. 706, relied upon by appellee, the statute there under construction specified that the cost of educating each high school pupil of any high school district shall be determined by dividing the total amount "expended" by the high school during any school year by the average daily attendance of pupils enrolled in the high school or high schools of the district for the same year. The court held in that case that "expended" means "paid out, disbursed" and that depreciation of the building cannot be properly termed an "amount expended" during the year and therefore could not be included in a claim for tuition. In *School District v. Smith,* 84 Ore. 50, 164 Pac. 375, also cited by appellee, interest on money borrowed in connection with the construction of a high school building was disallowed on the basis that there is a difference between construction and maintenance, and that the statute made provision only for the recovery of money expended for maintenance. The Oregon statute is materially different from the statute of this State, and neither of those cases is of any assistance here.

As a further evidence that the legislature intended depreciation to be charged as an item of the "cost of maintaining the high school," it is well to note that the only item mentioned by the statute to be excluded from the cost of maintaining the high school is "interest paid on bonded indebtedness." It is a cardinal rule of statutory construction that the expression of one thing or one mode of action in an enactment excludes all others. (*People ex rel. Nelson v. Wiersema State Bank,* 361 Ill. 75, 85; *People v. Collins,* 351 Ill. 551, 555.) At the third special session of the legislature in 1934 (Laws 1933–1934, p. 248), section 96 was amended so as to also exclude, in determining the

*per capita* cost of tuition, the amount of State aid received during the year under paragraph (f) of section 211 of the same act; again in 1937 (Laws 1937, p. 1119), section 96 was again amended, omitting that provision, but retaining the provision for excluding interest on bonded indebtedness. Section 96 has been amended many times, but there has never been a provision excluding depreciation in determining the cost of tuition. A most significant demonstration of the legislative intent is the 1943 amendment to section 96 (Ill. Rev. Stat. 1943, ch. 122, par. 104 [Jones Ill. Stats. Ann. 123.111]), by which the following provision was added:

"Depreciation on the building and equipment of the high school attended shall be included as part of the cost of maintaining the high school attended, and the amount of annual depreciation on such building and equipment shall be dependent upon the useful life of such property."

In our opinion the conclusion that depreciation is a proper charge to be included in the "cost of maintaining the high school," is inescapable. There is no question of fraud or mistake in this record and appellee, after checking and auditing the claims, and approving and voluntarily paying the depreciation charged to it on account of the 55 per cent allocable to the money furnished by the high school district is not in a position to question that part of the claims.

Counsel for appellee insist that in any event, depreciation allocable to donated capital is not only improper, but inequitable. We do not think so. Donations such as P. W. A. grants, to school districts are expressly authorized by statute. (Ill. Rev. Stat. 1943, ch. 29, par. 33a [Jones Ill. Stats. Ann. 137.23 (2)].) Appellee concedes that if the P. W. A. grant is included in the depreciation basis, section 96 would not be unconstitutional, as providing for double taxa-

tion, inasmuch as a Federal tax on the one hand, and a State tax on the other, is involved. It cannot be controverted that when such a grant is paid to the school district, the money, and successively the buildings and equipment constructed or purchased therewith, become the property of the district, as much so as if the money had been raised by a bond issue or by direct taxation. There is no difference in the quality of the ownership. The only difference is in the source of the funds used in acquiring a site or in the construction of the school buildings. This can be of no concern to the taxpayers of the non-high school district, inasmuch as they did not contribute thereto by any ad valorem tax upon their property. When a building is constructed and depreciation sets in, the depreciation is a specific loss to the district which owns the building, whether it was constructed wholly by taxation or by donated money or by both. Such depreciation entails the factor of replacement, and is obviously a part of the "cost of maintaining the high school."

In the instant case the non-high school district is charged with only the proportion of the depreciation, including that part allocable to the P. W. A. grant, as represents its proportion of the total number of high school pupils. The burden of the remainder of the depreciation is upon the high school district. This method of apportionment of cost is in accord with the statute. If the whole of such depreciation, or the portion allocable to the P. W. A. grant, is charged only to the taxpayers of the district wherein the building is located, the taxpayers of the non-high school district will enjoy the same benefits and privileges of the high school as the taxpayers of the high school district, without contributing to the loss occasioned by such depreciation, and put that burden upon the latter district. Such a situation would bring about an inequality in the burdens of the taxpayers of the two districts enjoying the same privileges, and would nul-

lify the legislative intent "to secure as even a distribution of cost as it is possible to obtain" as mentioned in *People v. Chicago & N. W. Ry. Co.*, 286 Ill. 384.

In *Board of Education of Paris Union School Dist. No. 95 v. Board of Education of Non-High School Dist. of Edgar County*, 231 Ill. App. 415, the appellant contended that depreciation should be based on the cost of the property. In denying this contention the court said at pages 421, 422 of the opinion:

"It is suggested that school districts, in many cases, are donees in charitable donations, and receive gifts of money, sites, buildings and equipment, and that under the rule contended for by the appellant, these would operate to the benefit of the non-high school district the same as to the donee intended. If the rule should be established, as contended for by appellant, it could be equally as cogently contended that the serving district had misappropriated its funds, entered into improvident contracts, paid exhorbitant prices for its site, buildings and equipment and that the "cost price" of such property was grossly unfair and unjust.

"It would seem beyond question that the depreciation value of the property should be based upon its varying value from year to year, in order to arrive at a result that would replace the properties, and we are unable to arrive at any fair and just method of computing the value of rent for use and occupation, when it is to be computed upon a percentage of value basis, except to make the computation upon the value at the time of the use."

In *Board of Education v. Haworth*, 274 Ill. 538, relied upon by appellee, a statute of 1915 provided that the tuition of non-high school pupils should be paid from the State School fund, which was raised by taxation of all property in the State. The court held the statute was unconstitutional because it compelled the taxpayers of the school district maintaining the school

to contribute indirectly to the tuition of pupils in districts having no high school, and thus contravened the constitutional requirement for uniformity and equality of taxation, but that case has no application to funds donated by the P. W. A. which are not raised by a State tax.

Appellee urges as analogous the fact that in determining income tax under the Internal Revenue Code, depreciation on items represented by donated capital is not deductible (citing *Southern Power & Manufacturing Co. v. Commissioner of Internal Revenue,* 82 F. (2d) 104; *Kell v. Commissioner of Internal Revenue,* 88 F. (2d) 453; *Detroit Edison Co. v. Commissioner of Internal Revenue,* 131 F. (2d) 619). Those holdings are because of the express provisions of the Internal Revenue Code to that effect. See sections 113 and 114 as amended in 1942. The statutes of this State contain no such provision, and those cases have no application here. Nor does the fact that Federal aid received for part payment of the salaries of vocational teachers is not included in the tuition base, have any bearing on the issue here. The teaching of vocations may be discontinued at any time, whereupon the Federal aid would no longer be forthcoming, while depreciation on a building or equipment is a fixed charge and an unavoidable loss to the school district which owns it, with the ultimate burden of replacement.

The trial court erred in dismissing the suit on appellee's motion. Furthermore costs are not assessable against school officers in cases of this character. (Ill. Rev. Stat. 1941, ch. 122, par. 290 [Jones Ill. Stats. Ann. 123.360].) The judgment appealed from is reversed and this cause is remanded to the circuit court with directions to overrule appellee's motion to strike the amended complaint and to proceed in accordance with the views herein expressed.

*Reversed and remanded with directions.*