**Downers Grove Community High School District No. 99 et al., Appellees, v. Board of Education of Non-high School District of DuPage County, Appellant.**

**Gen. No. 10,075.**

 Opinion filed June 14, 1946. Released for publication July 15, 1946.

S. S. Du Hamel, of Springfield, for appellant.

Harold W. Norman, of Chicago, and William E. Hooper, of Downers Grove, for appellees.

Mr. Justice Dove delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of DuPage county for $24,818.83 against appellant non-high school district, for the balance of tuition due appellees for pupils attending the Downers Grove Community High School from the non-high school district for the school years 1938–1939 to 1942–1943 inclusive.

It is conceded that the non-high school district owes the high school district on this account. The only controversy is as to certain items included and other items excluded by the court as entering into the *per capita* cost of maintaining the high school, the method of computation used in arriving at such *per capita* cost, and the resulting amount of the debt.

During the period in controversy, the pertinent portion of the statute relating to tuition to be paid by non-high school districts for pupils therefrom attending a high school in another school district (Ill. Rev. Stat. 1941, ch. 122, § 96, par. 104 [Jones Ill. Stats. Ann. 123.923]), reads as follows:

"The tuition paid shall in no case exceed the per capita cost of maintaining the high school attended, excluding therefrom interest paid on bonded indebtedness, which tuition shall be computed by dividing the total cost of conducting and maintaining said high school by the average number of pupils enrolled, including tuition pupils."

In 1943 this section was amended by adding the following:

"Depreciation on the building and equipment of the high school attended shall be included as part of the cost of maintaining the high school attended, and the amount of annual depreciation on such building and equipment shall be dependent upon the useful life of such property." (Ill. Rev. Stat. 1943, ch. 122, par. 104 [Jones Ill. Stats. Ann. 123.923].)

The basis of the judgment in this case is as follows: During the school years in controversy the average number of pupils attending the high school from the non-high school district was respectively: 1938–1939, 132.83; 1939–1940, 171.16; 1940–1941, 194.88; 1941–1942, 194.86; 1942–1943, 191.66; that the total cost of conducting and maintaining the high school for those school years, including depreciation, but excluding repairs of building or building equipment, and replacement of building equipment and educational equipment, was respectively as follows: $109,350.22; $111,959.23; $122,108.74, $124,314.06 and $137,641.10; that during those respective school years the following amounts were expended for the following purposes:

| | Repair of Building | Repair of Building Equipment | Replacement of Building Equipment | Replacement of Typewriters | Replacement of other Equipment |
|---|---|---|---|---|---|
| 1938–1939 | $269.67 | $532.26 | $119.50 | $332.98 | $ 34.84 |
| 1939–1940 | 708.58 | 814.44 | 59.71 | 495.93 | 532.29 |
| 1940–1941 | 594.07 | 431.44 | 841.47 | 721.00 | 466.47 |
| 1941–1942 | 639.56 | 1,567.36 | 227.25 | 428.77 | 309.74 |
| 1942–1943 | 668.61 | 617.39 | 38.91 | 530.14 | 59.97 |

The total cost of conducting and maintaining the high school, the average number of pupils enrolled, and the *per capita* cost was as follows:

| | Total Cost | Average Enroll- ment | Per Capita Cost | Due from Appellant |
|---|---|---|---|---|
| 1938–1939 | $110,522.93 | 1,166.43 | $ 94.75 | $12,565.64 |
| 1939–1940 | 114,396.60 | 1,176.22 | 97.25 | 16,645.31 |
| 1940–1941 | 124,910.84 | 1,156.65 | 107.99 | 21,045.09 |
| 1941–1942 | 127,336.67 | 1,136.10 | 112.08 ' | 21,839.90 |
| 1942–1943 | 139,370.57 | 1,068.40 | 130.45 | 25,002.05 |

It was agreed on the trial, and the court found, that $72,299.16 had been paid by the non-high school district to the high school district during those years on account of tuition, and the court found that the balance of $24,818.83 was still due and unpaid and it was for this sum that judgment was rendered.

■■ No question is raised as to the average number of pupils attending the high school from the non-high school district nor as to the average total enrollment. The first ground argued for reversal is that the trial court erred in not deducting the tuition received from other high school districts from the cost of maintaining the high school before computing the *per capita* cost to be charged against the non-high school district, and in striking the third separate defense alleging this ground. The statute provides for no deductions except interest on bonded indebtedness and expressly provides that the tuition shall be computed by dividing the total cost of maintaining the high school by the average number of pupils enrolled, including tuition pupils. It is a cardinal rule of statutory construction that the expression of one thing or mode of action in an enactment excludes all others. (*People ex rel. Nelson v. Wiersema State Bank,* 361 Ill. 75, 85; *People v. Collins,* 351 Ill. 551, 555; *Board of Education v. Board of Education,* 321 Ill. App. 131, 137.) The divisor, "the average number of pupils enrolled, including tuition pupils," manifestly includes all pupils enrolled, including all tuition pupils, and does not permit of a construction excluding any group of pupils.

During the period in controversy, sec. 96 also provided that the tuition to be paid by other high school districts for pupils therefrom attending a high school in another school ·district, "shall not exceed the per capita cost of maintaining the high school attended." It would be just as logical to argue that the tuition received from the non-high school district should be deducted from the cost of maintaining the high school attended before computing the *per capita* cost to be charged against the other high schools. Manifestly the statute does not contemplate any such procedure in either case. It is apparent that any such method would result in an unequal *per capita* cost to the school districts involved, and would nullify the express provisions of the statute and the legislative intent "to secure as even a distribution of cost as it is possible to obtain," mentioned in *People v. Chicago & N. W. R. Co.*, 286 Ill. 384, 395.

The claim that the court should have excluded from the total cost of maintaining the high school the sums received by the school district from the State school distributive fund, is also without merit. In 1934, sec. 96 was amended by adding the following proviso: "Provided that in determining the per capita cost there shall also be excluded from the total cost of conducting and maintaining said high school the amount of State aid received during the year on account of claims provided under paragraph (f) of section 211 of this Act." (Laws 1933–34, Spec. Sess. p. 248.) Paragraph (f) of section 211 provided for periodical issue of warrants by the auditor for the payment of available common school funds to the county superintendents of schools of the various counties.

Appellant cites this amendment and quotes from *Board of Education v. Board of Education*, 343 Ill. 464, 468, as follows: "Actual cost is the basis prescribed by the statute upon which the tuition must be

computed." That expression of the court concerned a charge of one fourth of an insurance premium on a five year policy issued upon payment in advance of four annual rates, and the court held that only one fifth of the premium was chargeable for the current year. That case has no bearing here. The amendment invoked was repealed in 1937 (Laws 1937, pp. 1116, 1119), by a re-enactment of sec. 96, omitting the amendment, and restoring the section to its original form. No more potent or unmistakable evidence of the legislative intent to omit such a deduction could be produced. This also disposes of the claim that the court erred in striking the second separate defense claiming that State aid should be excluded.

It is next claimed that having charged depreciation on the building and equipment, appellees had no right to charge repairs and replacements, on the theory that the result is a double charge on the same account. Depreciation is a loss not restored by current maintenance, in other words, it is a loss over and above current repairs. (*Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31, 59; *Chicago Rys. Co. v. Illinois Commerce Commission,* 277 Fed. 970; *Cumberland Telephone & Telegraph Co. v. City of Louisville,* 187 Fed. 637, 653; *City of Norfolk v. Board of Sup'rs of Nansemond County,* 168 Va. 606, 192 S. E. 588, 595; *City of Waterville v. Kennebec Water District,* 138 Me. 307, 25 A. (2d) 475, 482; *Lindheimer v. Illinois Bell Tel. Co.,* 292 U. S. 151, 78 L. Ed. 1182, 54 Sup. Ct. 658, 664.) In determining reasonable rates for supplying public service it is proper to include in operating expenses, that is, in the cost of producing the service, an allowance for consumption of capital in order to maintain the integrity of the investment in the service rendered. (*Peoples Gas Light & Coke Co. v. Slattery, supra.*) The cases cited above involve rate making for public service rendered. As a rate for service to the public is involved in the instant case these cases are analogous and applicable.

The particular items allowed as part of the total cost of conducting the high school, complained about by appellant, are: (a) about $200 charged as repairs to the roof of the building in 1940, claimed to be unfair because 20 per cent of it had already been charged to depreciation at 2 per cent per annum; (b) $650.64 for new boiler tubes, with a like claim as to depreciation; (c) replacement of typewriters at $70 each, less $30 allowance for the old machine, when $3.50 per year was allowed for depreciation; and (d) cost of replacing gymnasium mats at approximately $160, in addition to a 70 per cent charge for depreciation. The same argument is advanced as to other replacements of a similar character. No complaint is made as to the rate of depreciation adopted by the court.

■■ It appears from the testimony of the superintendent of the high school, who computed the cost of maintenance and operation, that the term "replacement" was used in the sense of replacing furniture, desks, tools, tables, or something of that kind, or replacing equipment used in instruction, such as in the laboratory, and that he charged the replacement cost and the depreciation "right along." As we said in *Board of Education v. Board of Education,* 321 Ill. App. 131, 135: "Outside of the salvage value at the expiration of the useful life of the building, the money spent for its construction or acquisition is gone, beyond any power of the school authorities to recover any part of it." What is there said obviously relates to equipment as well as to a building. By long established and practically universal custom, the cost of keeping up repairs enters into and is a factor in fixing the rate of depreciation allowable for the useful life of a building or equipment. It was the legislative intent that the cost of conducting and maintaining the high school should be based upon two elements, first, the expense of conducting and operating the school, and second, the maintenance of the school property.

(*Board of Education v. Board of Education,* 343 Ill. 464, 467.) As to the items of repairs to the roof of the building and new boiler tubes, they are obviously current repairs of periodical recurrence, in the same class as painting, or replacing broken windows, and the like, not allocable to depreciation. We do not think there was any error in the allowance of those two charges.

Typewriters and gymnasium mats belong to the first element of maintenance above mentioned, that is,— the expense of conducting and operating the school. While appellees had charged depreciation on the books as 10 per cent per annum, they agreed on the trial to a rate of 5 per cent, which was adopted by the court. Typewriters were replaced every three years. The net cost, at the price of $70, with an allowance of $30 for the old machine, was $40. At 5 per cent on the original cost, the depreciation would amount to $3.50 per annum, or $10.50 for the three year period. The court allowed, in addition, 65 per cent of the replacement cost, or $26, making the total allowance for the three year period of $36.50, which is less than the $40 net cost to the district. To make appellant's theory applicable, the district would have to retain the typewriters for 20 years.

The gymnasium mats cost about $160, and had a life of about seven years. The depreciation allowed would amount to $8 per year or $56 for the seven year period. Appellees argue that the balance of the cost, or $104, could be charged as an operating expense in the year of replacement; that in such event the cost of the new mats, $160, would be treated as a capital expenditure and depreciation on the new $160 would continue for 20 years, thus extending for seven years beyond the originally contemplated period of 20 years; or, that another way to handle it would be the method followed by them, namely, to charge the entire replacement cost of $160 to expense in the

year of replacement, instead of $104, a difference of
$56; that the additional charge in one year is offset
by the fact that the replacement expenditure is not
capitalized and hence the depreciation ceases at the
end of the original 20 year period, and that thus it
becomes a question of whether the $56 difference shall
be charged to expense in the year of replacement or
shall be recovered by seven additional years of depre-
ciation of $8.00 per annum; and that the difference in
the two methods is trivial. We think there is much
force in this argument and that the claim of appellant
of a double charge on account of typewriters, gym-
nasium mats, and other equipment of a similar
character should not be sustained. In *Board of Educa-
tion v. Board of Education, supra,* at page 468, the
court said: "Books, chairs, typewriters and appara-
tus of various kinds may not be worn out, and station-
ery and supplies, if bought in large quantities, may
not be wholly exhausted within a particular year.
During the same year, however, other like chattels be-
come useless and supplies not currently purchased
are used and their cost is not taken into account at
the time. Such purchases of particular things, al-
though made in certain instances less often than once
a year, may properly be regarded as replacements
and the evidence shows that the expenditures there-
for are, speaking generally, substantially the same
from year to year. An absolutely accurate distribu-
tion of the cost of conducting and maintaining a high
school between successive years cannot be made and
the circuit court did not err in allowing the foregoing
items as parts of such cost for the school years in
question." This also disposes of appellant's argu-
ment that the expenses of replacement in some years
were much larger than in others, and that a taxpayer
moving out of the non-high school district after the
year in which the larger charge occurred, would be
discriminated against.

The School Code (Ill. Rev. Stat. 1945, ch. 122, par. 18–3 [Jones Ill. Stats. Ann. 123.1031]) providing for payment from the State treasury of tuition, on the basis of *per capita* cost, for children from orphanages or homes for orphans, dependent or abandoned children admitted thereto from the State in general, contains the following provision, invoked by appellant:

"Such total annual per capita cost shall be determined by totaling all expenses of the school district for the school year preceding the filing of such claim, including among other things depreciation and insurance, and excluding capital expenditures, the retirement of bonds and anticipation warrants," etc.

Appellant claims that under the doctrine that all school statutes should be construed together, capital expenditures should be excluded in the case at bar. This section specifically differentiates between depreciation and capital expenditures, and the express exclusion of capital expenditures therein is no more than is provided by necessary implication in sec. 96, *supra.* Capital expenditure is not here involved, and the right to charge for replacement of typewriters and other chattel equipment is expressly sanctioned in *Board of Education v. Board of Education, supra.*

■ There was no error in entering judgment against appellant for costs of suit. The exemption from liability for costs (Ill. Rev. Stat. 1945, ch. 122, par. 15–6 [Jones Ill. Stats. Ann. 123.995]) applies only to unsuccessful plaintiff school corporations or school officers. (*Sebastian v. School Directors of School Dist. No. 103, Montgomery County,* 317 Ill. App. 524, 529.) *Board of Education v. Board of Education,* 321 Ill. App. 131, relied upon by appellant, was a case where the plaintiff was unsuccessful in a suit, and is not in point. Furthermore, par. 15–6 further provides for collection of costs from defend-

ant school officers against whom a judgment is obtained.

The judgment of the trial court was correct, and is affirmed.

*Affirmed.*